NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0011n.06
Filed: January 5, 2006

Case No. 04-5939

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LATANUA RUDD, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| SHELBY COUNTY, TENNESSEE, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| ――――――――――――――――――――――― | ) | |
| | ) | |
| | ) | |

BEFORE: KEITH, KENNEDY, and BATCHELDER, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Shelby County, Tennessee, appeals the district court's denial of its motion for judgment as a matter of law in this sexual harassment case. Because we find as a matter of law that Shelby County took prompt and corrective action for purposes of the test set forth in *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 872 (6th Cir. 1997), we reverse the decision of the district court.

Latanua Rudd, the plaintiff and appellee in this case, was a deputy sheriff in the Shelby County Sheriff's Department. She was sexually harassed by her co-worker, Sergeant Lance Burton. In a single afternoon, Burton handcuffed Rudd, bending over, to a file cabinet, rubbed himself on her, draped a belly chain around her neck and asked via intercom whether it was "too hot in the kitchen" for her. Although the parties' accounts vary as to the actions taken by Rudd's immediate

supervisors on the day of the harassment, it is clear that, on the following day, Rudd complained to a superior officer. That officer immediately referred Rudd to the Internal Affairs Division, and, within five days after the incident, the department commenced a formal investigation. Rudd was permitted to work in a separate facility so that she would not have to encounter Burton. Within a month, the department issued an oral reprimand to one of Rudd's immediate supervisors and a written reprimand to the other. Approximately one week later, the department gave Burton written notice that he would be demoted to the rank of patrolman, suspended for thirty days without pay and placed on probation for six months. He appealed the penalty, and while his appeal was pending, he retired with full rank and pay pursuant to a settlement agreement with the department. Rudd, who left her job within two weeks of the harassment, filed this action, claiming, among other things, that the conduct of her co-worker Burton constituted sexual harassment and gender discrimination and created a hostile work environment in violation of 42 U.S.C. § 2000e ("Title VII") and the Tennessee Human Rights Act. A jury awarded her almost $1 million in compensatory damages, back pay and lost future wages.

After the district court refused to grant judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), Shelby County filed this appeal. We review *de novo* a district court's denial of judgment as a matter of law. *McMurdy v. Montgomery County, Ohio*, 240 F.3d 512, 517 (6th Cir. 2001).

The outcome of this case depends not on the egregiousness of Burton's behavior but on whether Rudd has proven the elements set forth in *Blankenship.*[1] 123 F.3d at 872. In order to

---

[1]We apply *Blankenship* because this case deals with coworker harassment. Although Shelby County invites us to look to the Supreme Court's decision in *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004), we decline to do so. *Suders* dealt with applicability of the *Ellerth/Faragher* defense to cases where a hostile work environment was created by a supervisor. *Id*. at 143. Burton was not Rudd's supervisor: he was her coworker. The Court wrote in *Suders*, "*Ellerth* and *Faragher* expressed no view on the employer liability standard for co-worker harassment. Nor do we." *Id*. n.6. Accordingly, *Blankenship* applies.

2

prevail in a coworker harassment case under *Blankenship*, an employee must prove that (1) the employee is a member of a protected class; (2) the employee was subject to unwelcomed sexual harassment; (3) the harassment was based on the employee's sex; (4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and (5) the employer knew or should have known of the charged sexual harassment and failed to implement prompt and corrective action. *Id.* This standard is "markedly different" from the one applied to harassment by supervisors. *Id.* at 873. Under the *Blankenship* standard, "the employer can be liable only if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known." *Id.* If the employer responds in good faith, it cannot be held liable. *Id.* Finally, "the appropriateness of a response depends on the frequency and severity of the alleged harassment." *Id.* at 872.

Rudd has clearly satisfied the first four elements of the *Blankenship* test, but she has not satisfied the fifth. Officer Burton's conduct— shocking as it was—does not relieve Rudd of the burden of proving that Shelby County failed to take prompt and effective corrective action once it learned of Burton's harassment. *Blankenship*, 123 F.3d at 873. The evidence, viewed in the light most favorable to Rudd, does not permit such a finding. Rudd's immediate supervisors learned of Burton's harassment, and failed to take any corrective action, on December 22. On December 23, Rudd notified a superior officer, who referred her that very day to the Internal Affairs Division. The Internal Affairs Division asked her to file forthwith a detailed written report of the harassment, which she did. Contemporaneously, Rudd was permitted to begin working in a separate facility, away from Burton. By December 28, the Internal Affairs Division had begun its investigation. In a little over a month, the department had notified Burton of the discipline it intended to impose, and

3

had actually disciplined Rudd's supervisors. Although Burton's early retirement was galling to Rudd, it removed him from the department, and, in any event, Rudd did not return to work at the department after January 6, 2001.

We find as a matter of law that the county's actions demonstrate a good faith effort to safeguard Rudd, and that no reasonable jury could have concluded that Shelby County failed to take prompt and corrective action. Because Rudd has not proven the fifth element of the *Blankenship* test, we **REVERSE** the district court's order denying judgment as a matter of law and **REMAND** the case for judgment in favor of Shelby County.